IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| Mark Donelson, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiffs, | ) Case No. 4:18-cv-01023-HFS ) |
| v. | ) ) ) |
| Ameriprise Financial Svs. Inc., et. al., | ) |

ORDER

Mark Donelson has brought a putative class action complaint against his former investment advisor, Mark Sachse, his former investment advising firm, Ameriprise Financial Services, Inc. ("Ameriprise") and individual officers of Ameriprise: James Cracchiolo, Kelli Hunter Petruzillo, Neal Maglaque, and Patrick O' Connell ("Officer Defendants"). (Doc. 9).

Donelson asserts claims based on violations of federal securities laws and breach of fiduciary duties and he also seeks to represent a class of clients of Ameriprise and Sachse. Three motions are currently pending: (1) Ameriprise's Motion to Strike Class Allegations and to Compel Arbitration (Doc. 28); (2) Sachse's motion to Strike Class Allegations and to Compel Arbitration (Doc. 41); and (3) the Officer Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or, alternatively to Compel Arbitration. (Doc. 30).

**Background.**

According to the First Amended Complaint, Donelson has been employed for the last 28 years at Sam's Club in Gladstone, Missouri. He is a high school graduate with no formal training in trading securities. Donelson had an investment account with Robert W. Baird & Co. ("Baird"). (Doc. 9, ¶ 16-19).

Sometime in 2008, Sachse contacted Donelson by telephone and told him that he had recently become a broker-advisor at Baird and that he had heard Donelson was adept at trading options. The two became friends over the next couple of years, often meeting for coffee before

Donelson's shift at Sam's Club. Sachse told Donelson that he was a former attorney specializing in criminal practice and that he had stopped practicing law because he no longer liked it. Unbeknownst to Donelson, Sachse had a history of sorts; former clients had filed ethical complaints with the Kansas Bar Association, and he was ultimately disbarred by order of the Supreme Court of Kansas in 2007. (Doc. 9 ¶ 19-22).

In 2010, Sachse stopped working at Baird and became a broker-investment advisor at Ameriprise. Sachse told Donelson he changed companies "to make more money." At Sachse's request, Donaldson moved his investment account from Baird to Ameriprise. Donelson met Sachse at a restaurant to sign papers needed to open his new account at Ameriprise. (Doc. 37-5, ¶ 15). Sachse had a copy of what he said was an Account Application. (Id. at ¶ 16). According to Donelson, Sachse filled out the application himself, in his own handwriting, checking each box that, according to Sachse, required checking. (Id. at ¶18). Donelson states that he instructed Sachse that "under no circumstances was he to trade any securities in or for my account on margin.[1]" (Doc. 37-5, ¶24) (Doc. 9 ¶ 23-25).

Part 8 of the Account Application, however, authorized margin borrowing. (Doc. 37-1, p.4). Donelson explains in his affidavit that Sachse told him he checked the box as a "formality" but assured him he would not trade any securities on margin. (Doc. 37-5, ¶24). Donelson signed the Application as instructed, without reading it or being provided a copy of it. (Doc. 37-5 ¶ ¶ 17- 23).

Part 10 of the Application, a lengthy recitation in small print, states:

> You acknowledge that you have received and read the Agreement and agree to abide by the terms and conditions as currently in effect or as they may be amended from time to time. You hereby consent to all these terms and conditions with full knowledge and understanding of the information contained in the Agreement. This account is governed by a predispute arbitration clause

---

[1] Trading on margin means that the broker dealer uses its funds to buy securities and the purchase is secured by cash and assets in the customer account.

which is found in Section 26, Page 3 of the Agreement. You acknowledge receipt
of the predispute arbitration clause. (Doc. 37, Ex. 1).

The "Agreement" apparently referred to is the "Ameriprise Brokerage Client Agreement for Non-Qualified Brokerage Accounts." ("Client Agreement") (Doc. 37, Ex. 2). The twenty-five-page Client Agreement, although referenced in the signed Application, is neither dated nor signed. (Id). Donelson states that he did not see, read, or sign the Agreement and was never provided a copy of it. (Doc. 37-5, ¶ 27).

Section 26 of the Client Agreement provides, in part, that "all controversies that may arise between us . . . shall be determined by arbitration . . .". (Doc. 37, Ex. 2 at § 26). Section 26 further provides:

> NO PERSON SHALL BRING A PUTATIVE OR CERTIFIED CLASS ACTION TO ARBITRATION, NOR SEEK TO ENFORCE ANY PRE-DISPUTE ARBITRATION AGREEMENT AGAINST ANY PERSON WHO HAS INITIATED IN COURT A PUTATIVE CLASS ACTION; OR WHO IS A MEMBER OF A PUTATIVE CLASS WHO HAS NOT OPTED OUT OF THE CLASS WITH RESPECT TO AN CLAIMS ENCOMPASSED BY THE PUTATIVE CLASS ACTION UNTIL: (A) THE CLASS CERTIFICATION IS DENIED; (B) THE CLASS IS DECERTIFIED; OR (C) THE CUSTOMER IS EXCLUDED FROM THE CLASS BY THE COURT . . . . (DOC. 37, Ex. 2. at § 26).

Section 5 of the Client Agreement allows Ameriprise to amend the Client Agreement:

> **Amendments**. You agree that we shall have the right to amend this Agreement by modifying or rescinding any existing provisions or by adding any new provision. You understand and acknowledge that we may modify or change the terms and condition of this Agreement by mailing a written notice of the modification or change or a new printed modification to you or, if you are on online client, by posting such modifications or changes online. Such written notice or posting of the amendment will include the effective date of the modification or change. No such amendment shall become effective prior to 30 days from the date of such notice unless required or otherwise permitted by law or regulation. The use of your account after the mailing of any written notice or posting of such amendments shall constitute your acknowledgment and agreement to be bound thereby. (Doc. 37, Ex. 2. at § 5).

The First Amended Complaint details numerous and serious improprieties related to Sachse's handling of Donelson's investment account, described generally here as misrepresenting the account value, improper trading on the account, and misrepresenting reparation for problems with the account. (Doc. 9). Donelson alleges other customers of

3

Sachse and Ameriprise experienced similar improprieties and he seeks to represent those customers in this action. Ameriprise, Sachse, and the individual directors argue that the class action allegations should be stricken, and this dispute should then be ordered to arbitration under Section 26 of the Client Agreement. Donelson responds that the class action allegations preclude arbitration under the terms of the Client Agreement, and in any event, the arbitration agreement should not be enforced because he never agreed to it, and because it lacks consideration and is unconscionable under Missouri law.

**Arbitration.**

Under the Federal Arbitration Act, "a motion to compel arbitration must be granted if a valid arbitration clause exists which encompasses the dispute between the parties." M.A. Mortenson Co. v. Saunders Concrete Co., 676 F.3d 1153, 1156 (8th Cir. 2012). "Because arbitration is a matter of contract, whether an arbitration provision is valid is a matter of state contract law, and an arbitration provision may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability[.]" Torres v. Simpatico, Inc., 781 F.3d 963, 968 (8th Cir. 2015) (citations and internal quotation marks omitted). "If a valid and enforceable arbitration agreement exists under state-law contract principles, any dispute that falls within the scope of that agreement must be submitted to arbitration." Id. at 968 (citing Faber v. Menard, 367 F.3d 1048, 1052 (8th Cir. 2004)).

When presented with a motion to compel arbitration, the Court's role is limited to two inquiries: "(1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of the agreement." Robinson v. EOR-ARK, LLC, 841 F.3d 781, 783-84 (8th Cir. 2016) (citation and quotation mark omitted). "The party seeking to compel arbitration bears the burden of proving the existence of a valid and enforceable arbitration agreement." Driver, 2018 WL 3363795, at *4 (citation and quotation marks omitted).

Under both the Federal Arbitration Act, 9 U.S.C. 1 et seq, and the Missouri Uniform Arbitration Act, chapter 435, RS MO., whether the parties entered into a valid and enforceable arbitration agreement is a preliminary issue for the court to decide, applying Missouri law. Johnson v. Vatterott Educ. Ctrs. Inc., 410 S.W.3d 735, 738 (Mo. App. W.D. 2013) (citations omitted.).[2] In Missouri, "[t}he essential elements of a any contract, including one for arbitration, are offer, acceptance, and bargained for consideration." Baker v. Bristol Care Inc., 450 S.W.3d 770, 774 (Mo. 2014). Underlying those elements is the requirement of mutuality of agreement which requires that both parties assented to the terms of the contract. Jay Wolfe Used Cars, LLC v. Jackson, 428 S.W.3d 683, 688 (Mo. App. 2014). Because arbitration is a matter of consent not coercion, a court must be satisfied that the parties have concluded or formed an arbitration agreement before the court may order arbitration.

Donelson asserts that there was no acceptance or bargained for consideration, and thus, there is no enforceable arbitration contract. "Arbitration is solely a creature of contract and, thus, a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." State ex rel. Pinkerton v. Fahnestock, 531 S.W.3d 36, 49 (Mo. Banc. 2017). In support, Donelson has filed an affidavit acknowledging that although he signed the Application, he was never provided a complete copy of the Application and had no knowledge of the arbitration provision contained in the Application. (Doc. 37-5 ¶ 29). He states that "Sachse filled out the Application himself, 'checking' each 'box,' that according to Sachse, required 'checking.'" (Doc. 37-5 ¶18) Furthermore, he attests

---

[2] Section 23 of the Client Agreement states that "the agreement and its enforcement shall be governed by the state of Minnesota without giving effect to its choice of law principles." Although defendants cite this choice of law provision (Doc. 55, p. 7) they do not seriously challenge plaintiff's assertion that Missouri law controls or provide authority that the application of Minnesota law changes the analysis. "The choice-of-law provision can have no effect until the court determines the validity of the contract itself." John T. Jones Constr. Co. v. Hoot Gen'l Constr. Co., Inc. 613 F.3d 778, 782-83 (8th Cir. 2010).


Under both the Federal Arbitration Act, 9 U.S.C. 1 et seq, and the Missouri Uniform Arbitration Act, chapter 435, RS MO., whether the parties entered into a valid and enforceable arbitration agreement is a preliminary issue for the court to decide, applying Missouri law. Johnson v. Vatterott Educ. Ctrs. Inc., 410 S.W.3d 735, 738 (Mo. App. W.D. 2013) (citations omitted.).[2] In Missouri, "[t}he essential elements of a any contract, including one for arbitration, are offer, acceptance, and bargained for consideration." Baker v. Bristol Care Inc., 450 S.W.3d 770, 774 (Mo. 2014). Underlying those elements is the requirement of mutuality of agreement which requires that both parties assented to the terms of the contract. Jay Wolfe Used Cars, LLC v. Jackson, 428 S.W.3d 683, 688 (Mo. App. 2014). Because arbitration is a matter of consent not coercion, a court must be satisfied that the parties have concluded or formed an arbitration agreement before the court may order arbitration.

Donelson asserts that there was no acceptance or bargained for consideration, and thus, there is no enforceable arbitration contract. "Arbitration is solely a creature of contract and, thus, a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." State ex rel. Pinkerton v. Fahnestock, 531 S.W.3d 36, 49 (Mo. Banc. 2017). In support, Donelson has filed an affidavit acknowledging that although he signed the Application, he was never provided a complete copy of the Application and had no knowledge of the arbitration provision contained in the Application. (Doc. 37-5 ¶ 29). He states that "Sachse filled out the Application himself, 'checking' each 'box,' that according to Sachse, required 'checking.'" (Doc. 37-5 ¶18) Furthermore, he attests

---

[2] Section 23 of the Client Agreement states that "the agreement and its enforcement shall be governed by the state of Minnesota without giving effect to its choice of law principles." Although defendants cite this choice of law provision (Doc. 55, p. 7) they do not seriously challenge plaintiff's assertion that Missouri law controls or provide authority that the application of Minnesota law changes the analysis. "The choice-of-law provision can have no effect until the court determines the validity of the contract itself." John T. Jones Constr. Co. v. Hoot Gen'l Constr. Co., Inc. 613 F.3d 778, 782-83 (8th Cir. 2010).

that he did not sign the Client Agreement, was never provided a copy of it, and did not know that the Client Agreement existed until it was produced during this litigation.[3] (Doc. 37-5, ¶ 27).

Defendants respond that Donelson accepted their offer to arbitrate as evidenced by the signed Application, wherein he confirmed that he "received and read" the Client Agreement and agreed to abide by the terms and conditions of the Agreement "as currently in effect or as may be amended from time to time." (Doc. 29, p.15) (Doc. 42, p. 13). The defendants argue that Donaldson's signature shows that he accepted their offer to arbitrate and there was an enforceable agreement. They argue that Donaldson is bound by the arbitration provision because "a party who is capable of reading and understanding is charged with the knowledge of that which he or she signs." BP Products. N. Am. Inc. v. Walcott Enters. Inc., 2009 WL 3229024, at *4 (W.D. Mo.). In this case, however, we have a rather extreme form of adoption by reference of an allegedly unseen document. Moreover, as the cited case indicates, imputed knowledge is only used "absent a showing of fraud." Id. A later Eighth Circuit case refers to the parol evidence rule as applying in "the absence of fraud, accident, mistake, or duress." Smiley v. Gary Crossley Ford, Inc., 859 F.3d 545, 552 (8th Cir. 2017).

It is true that in regard to contracts, "signatures remain a common, though not exclusive, method of demonstrating agreement." Morrow v. Hallmark Cards, Inc., 273 S.W.3d 15, 23 (Mo..App. 2008) (citing cases). However, in light of the evidence presented by Donaldson, defendants have not met their burden of showing that there was a mutual agreement or meeting of the minds concerning arbitration. See Jay Wolfe Used Cars, LLC, 428 S.W.3d at 688.

First, Donaldson's signature on the Application only references an arbitration provision contained in the Client Agreement. It is undisputed that the Client Agreement is unsigned and undated, and defendants do not refute Donaldson's statement that he never received that printed

---

[3] Donelson also argues that there is a subsequent arbitration agreement which is inconsistent with the terms of the arbitration clause in the Client Agreement. Defendants do not attempt to compel arbitration under the terms of that second purported agreement and because this Court concludes that there is no enforceable arbitration agreement, it is unnecessary to determine if there are inconsistent agreements.

6

document. What defendant Sachse should have done, does not establish what he did do. In these circumstances, Donaldson's signature alone on the Account Application does not demonstrate a specific agreement to arbitrate when the arbitration provisions are found in another unidentified document which is unsigned and undated. Compare Stubblefield v. Best Cars KC, Inc., 506 S.W.3d 317 (W.D. Mo 2016) (discussing significance of signed arbitration agreement and sales contract which referred to arbitration agreement).

Second, Donaldson's affidavit supports the inference that he did not knowingly accept the terms of the Client Agreement. See Greene v. Alliance Automotive, Inc., 435 S.W.3d 646 (Mo. Ct. App. 2014) (discussing circumstances of "knowing" acceptance). Defendants offer no response to Donaldson's description of how Sachse handled the opening of his account or the signing of the Application. For example, Defendants do not deny that Donaldson was not shown the Account Application or Client Agreement, and that Sachse filled out the Application without showing it to Donaldson. (Doc. 37-5 ¶ ¶ 17 - 21). Cf. Pleasants v. American Express Co., 2007 WL 2407010 (E.D. Mo.) (defendants filed affidavits creating a presumption that plaintiff received arbitration clause).

Third, "[a]n arbitration agreement could be declared unenforceable if state law defenses such as fraud, duress, or unconscionability impact the formation of a contract." Torres v. Simpatico, Inc., 781 F.3d 963, 968 (8th Cir. 2015) (discussing Missouri law). Defendants' theory that Donaldson's signature shows an agreement to an unattached document is overly simplistic and fails to consider or address the circumstances as described by Donaldson surrounding his signing the Account Application.

The foregoing analysis is not the only basis for rejecting arbitration here – an alternative rationale follows. The purported agreement to arbitrate also fails for lack of consideration because Ameriprise retained the unilateral right to amend the agreement. "Consideration consists either of a promise (to do or refrain from doing something) or the transfer or giving up of something of value to

the other party." Baker v. Bristol Care Inc., 450 S.W.3d 770 (Mo. 2014). Mutual promises can constitute adequate consideration to support an enforceable contract:

> Bilateral contracts are supported by consideration and enforceable when each party promises to undertake some legal duty or liability. These promises, however, must be binding, not illusory. A promise is illusory when one party retains the unilateral right to amend the agreement and avoid its obligations. Id. at 777 (internal citations omitted).

In Baker, the Missouri Supreme Court held that an employer's promise to arbitrate its claims against an employee to be illusory when the employer retained the "right to amend, modify or revoke this agreement upon thirty (30) days prior notice to the employee." 450 S.W.3d at 776. Because the agreement permitted the employer to modify the arbitration agreement retroactively, apart from future dealings and controversies, the Supreme Court held that it was illusory and could not support adequate consideration. See also Soars v Easter Seals Midwest, 563 S.W.3d 111, 116 (Mo. 2018) (contract that purports to exchange mutual promises lacks legal consideration if one party retains unilateral right to modify as to permit the party to unilaterally divest itself of an obligation to perform promise initially made).

Ameriprise and Sachse respond that Baker does not control and there was adequate consideration because Ameriprise does not have unilateral authority to amend the agreement *retroactively* as in Baker. Under the Agreement, Ameriprise has "the right to amend the Agreement by modifying or rescinding any existing provisions or by adding any new provision" by "mailing a written notice of the modification or change or a new printed Agreement," but "[n]o such amendment shall become effective prior to 30 days from the date of such notice." (Doc. 55, p. 8). Defendants assert that the Eighth Circuit has compelled arbitration under an agreement containing a similar provision, citing Cicle v. Chase Bank, 583 F.3d 549, 555 (8th Cir. 2009)(compelling arbitration of plaintiff's claims under an agreement that gave plaintiff "thirty days to reject the changes to the agreement in writing which would close her account.").

The "fact that an employer has the unilateral right to amend an arbitration agreement may not render the agreement illusory if the employer's power to modify the agreement is meaningfully

8

restricted." Patrick v. Altria Group Dist. Co., 570 S.W.3d 138 (2019). Meaningful restriction has been construed to permit a party to make unilateral amendments to an agreement which: (1) are prospective in application and (2) about which the other party has reasonable advance notice. Id. at 144 (citing Frye, 321 S.W.3d at 429).

In Patrick, the employer argued that its right to amend the arbitration agreement was not illusory because the right to amend was limited. Any amendment could not be made to "a Dispute previously submitted to arbitration under the Program" and any amendment was not effective until the employer published notice to the amendment in a reasonable manner. Id. at 141. After reviewing case law from Missouri and other jurisdictions, the court held that the consideration was still illusory despite these limitations because (1) the amendment could apply to claims which have accrued, and of which the employer has notice, but which have not yet been submitted to arbitration ("accrued-but-unasserted") and (2) the agreement did not require advance notice of the amendment and the amendments became effective upon publication of the notice. Id. at 144. Similar considerations apply here. Ameriprise could amend the purported arbitration agreement to alter its obligation to arbitrate accrued-but-unasserted claims even though the amendment may not be effective for thirty days after notice. See Bowers v. Asbury St. Louis Lex, LLC, 478 S.W.3d 423 (Mo. Ct. App. E.D.) (arbitration agreement lacked consideration when employer could modify agreement with thirty days' notice). Defendants' reliance on Cicle is misplaced as the dispute in that case was whether the agreement was unconscionable, not whether there was adequate consideration. 583 F.3d at 554-557. Moreover, as a prediction of Missouri law it is superseded by the later Missouri cases. For these reasons, the purported agreement to arbitrate also fails for lack of consideration. Accordingly, the motions of Ameriprise, Sachse, and the Officer Defendants to compel arbitration are denied.

**Motion to Strike Class Allegations.**

Ameriprise and Sachse contend that Donelson's class action allegations in the Amended Complaint should be stricken because Donelson cannot satisfy Rule 23's predominance,

9

Case 4:18-cv-01023-BP   Document 75   Filed 12/03/19   Page 9 of 13

typicality, or adequacy requirements. (Defendants' moved to strike the class allegations in order to avoid the class action limitation contained in the purported arbitration agreement. Because this Court has ruled that the parties did not have an enforceable agreement to arbitrate, the motion to strike class allegations may have lost significance.)

In any event, striking a party's pleadings is an extreme measure, and motion to strike under Fed.R.Civ.P. 12(f) are generally viewed with disfavor and infrequently granted. <u>Beal v. Outfield Brew House LLC</u>, No. 2:18-cv-4028-MDH (Sept. 27, 2018). "The propriety of class action status can seldom be determined on the basis of pleadings alone." <u>Walker v. World Tire Corp.</u> 563 F.2d 918, 921 (8th Cir. 1977).

Despite this general disfavor, defendants assert that this Court is bound by the Eighth Circuit's ruling in <u>McCrary v. Stifel Nicolaus & Co.</u>, 687 F.3d 1052 (8th Cir. 2012), and that "securities fraud claims are ineligible for class treatment where, as here, the claims are based on unique oral representations made to a plaintiff and on distinct trading in a plaintiff's investment account." (Doc. 29, p. 7-8). The claims made in <u>McCrary</u>, like here, allege securities fraud violations based on misrepresentations made by an investment broker. The court found that the individualized nature of the churning, unauthorized trading, and misrepresentation claims rendered the claims insufficient under Rule 23(b)(3) for class action treatment and dismissed the class claims. Id at 1059.

It is true that many of the allegations in the first amended complaint are unique to Donelson and his specific account at Ameriprise. However, there are allegations which are broader and not necessarily unique to Donelson. For example, there are allegations that Sachse and Ameriprise misrepresented the fee structure, misrepresented the type of securities bought and sold, misrepresented accounting errors, and improperly and fraudulently classified distributions from investment accounts as dividends. (Doc. 9, ¶ 1). These allegations are broader than those alleged in <u>McCrary.</u> For the purpose of satisfying Rule 23(a)(2), a single

10

common question "will do." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 359 (2011). Donaldson is entitled to explore whether class action treatment might be available. Beal v. Outfield Brew House LLC, 18-CV-4028-MDH, (C.D. Mo. Sept. 27, 2018) (denying motion to strike class allegations as premature).

Thus, the extensive briefing of the defendants is more appropriate on a motion for class certification and Defendants' motion to strike class allegations is denied.[4]

**Personal Jurisdiction.**

The officer defendants also assert that the claims should be dismissed against them for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). They contend that plaintiff has failed to state a "colorable" claim under the Securities Exchange Act of 1934, and therefore, there is no personal jurisdiction over them under the nationwide service of process provision of the 1934 Act. (Doc. 30, p. 2). The officer defendants state that a claim is not colorable "if it is immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial and frivolous," citing Garcia-Aguillon v. Mukaskey, 524 F.3d 848, 850 (8th Cir. 2008).

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts all of a complaint's factual allegations as true, and construes them in the light most favorable to the plaintiff, drawing all reasonable inferences in its favor. See Ashley Cnty., Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009). The Court then asks whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, (2009) (internal citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

---

[4] Because I no longer am a trial judge, the class action issue may be reserved for a transferee judge who would have trial responsibilities.

11

To sustain a Rule 10b–5 action, a plaintiff must show "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Stoneridge Inv. Partners, LLC v. Sci.–Atlanta, 552 U.S. 148, 157 (2008); see also Minneapolis Firefighters' Relief Assn v. MEMC Elec. Materials, Inc., 641 F.3d 1023, 1028 (8th Cir. 2011) (quoting Stoneridge ).

In this case, the officer defendants argue that Donaldson has failed to state a colorable securities law violation, and therefore, there can be no claim against them as control persons. Specifically, the officer defendants contend that Donaldson has not alleged: (1) any connection between the alleged misrepresentation or omission and the purchase or sale of a security; and (2) any allegation that the officer defendants exercised control over Defendant Sachse's activities. The officer defendants characterize plaintiffs' claims against them as based solely on their status as an officer and director and that this status is insufficient to trigger liability.

The Officer Defendants' primary complaint is that Donelson has not alleged any "connection between the [alleged] misrepresentation or omission and the purchase or sale of a security." (Doc. 31, p. 7). As support, the Officer Defendants highlight certain allegations in the amended complaint relating to payments that were promised to Donaldson, accounting errors, and alleged offers of health insurance. (Id). The Officer Defendants, however, fail to examine the amended complaint and ignore numerous allegations which relate to the purchase and sale of securities. Donaldson includes allegations about transactions in specified securities, (Doc. 9 ¶¶ 153-158) and the allegations are consistent with those in Lewis v. Scottrade, Inc 879 F.3d 850, 852 (8th Cir. 2018), in which the Eighth Circuit concluded it is "obvious" that the misconduct alleged was in connection with the purchase and sale of covered securities. Accord Zola v. TD Ameritrade Inc. 889 F.3d 920 (8th Cir. 2018) (brokerage firms' alleged misconduct in routing orders to certain traders meets the in connection with the purchase or sale of a covered

12

security requirement); Arrington v. Merrill Lynch, Pierce Fenner & Smith, Inc., 651 F.2d 615 (9th Cir. 1981) (broker's failure to inform customer about the risks of margin accounts constituted a misrepresentation in connection with the purchase and sale of securities).

The officer defendants' argument that this Court should dismiss Donaldson's allegation that Sachse improperly traded on margin because these allegations are "contradicted by his Account Application in which he explicitly agreed to the creation of a margin account" (Doc. 31, p. 8) ignores the standard of review on a motion to dismiss. Fed. R.Civ. P. 12(b)(6). As does the officer defendants' argument that Donaldson has "failed to show that the [officer defendants] actually exercised control over Mr. Sachse's alleged acts or omissions." (Doc. 31, p. 9). In this circuit, "culpable participation by the alleged control person in the primary violation is not part of a plaintiff's prima facie case." Lustgraff v. Behrens, 619 F.3d 867, 873 (8th Cir. 2010). Control person liability requires only some indirect means of discipline or influence short of actual direction to hold a controlling person liable. Id. Donaldson has included allegations of both direct and indirect control, including specific allegations that Officer Defendant Cracchiolo was actively involved in the mishandling of his account. (Doc. 9, ¶67-75). There are sufficient allegations to support control person liability to survive a motion to dismiss.

**Conclusion.**

For the reasons stated above, Ameriprise's Motion to Strike Class Allegations and to Compel Arbitration (Doc. 28) is DENIED; (2) Sachse's motion to Strike Class Allegations and to Compel Arbitration (Doc. 41) is DENIED; and (3) the Officer Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or, alternatively to Compel Arbitration (Doc. 30) is DENIED.

          /s/ Howard F. Sachs
          Howard F. Sachs
          United States District Court Judge

Dated: December 3, 2019
Kansas City, Missouri

13

Case 4:18-cv-01023-BP   Document 75   Filed 12/03/19   Page 13 of 13